UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH SCLAFANI, MICHAEL FEINSTEIN, and BRET CAPPOLA,<br><br>Plaintiffs,<br><br>CAROL A. MICI, in her official capacity as Commissioner of the Massachusetts Department of Corrections,<br>DOUGLAS DEMOURA, in his official capacity as Superintendent of MCI-Cedar Junction, and STEVE SILVA, in his official capacity as Superintendent of MCI-Norfolk,<br><br>Defendants. | C.A. No. |

## DECLARATION OF YVONNE SMIKLE, MD

Pursuant to 28 U.S.C. § 1746, I, Yvonne Smikle, M.D., declare as follows:

1. My name is Yvonne Smikle. I am a board certified physician in family medicine employed by Middlesex Recovery. In my clinical capacity as his treating physician, I have been working with Joseph Sclafani since July 2019 to assist with his recovery from opioid use disorder.

2. I received my medical degree from the University of Massachusetts in 1999. I completed my residency at the University of Massachusetts. A copy of my curriculum vitae is attached as Exhibit 1.

3. For over sixteen years, I have treated patients who suffer from opioid use disorder with medication for addiction treatment (MAT), including buprenorphine and naltrexone. Since August 2012, I have been at the Middlesex Recovery office-based treatment center, where I offer MAT to treat opioid use disorder.

4. The use of MAT is the medical standard of care for the treatment of opioid use disorder.

5. Every day I treat patients for opioid use disorder and other forms of substance use disorder. For many of my patients, an essential component of treatment for opioid use disorder is the administration of MAT maintenance.

6. I have treated hundreds of patients with MAT, including buprenorphine, and witnessed how it can save patient's lives.

7. I met Joe Sclafani when I admitted him into Middlesex Recovery in July 2019. I diagnosed Joe with opioid use disorder and prescribed buprenorphine to treat it based on his individualized medical needs. In choosing this treatment, I considered, among other things, the length and severity of Joe's active addiction to opioids; his risk factors for relapse,

1

including chronic pain and mental illness; and his previously unsuccessful attempts to stay in long-term recovery without medication.

8. Based on Joe's addiction and treatment history, I prescribed him 16 mg of buprenorphine per day. At this dosage, Joe did not suffer from the symptoms of opioid use disorder and he did not use illicit opiates. He was able to function each day as a parent of a young boy. In my medical opinion, 16 mg is the appropriate dose for Joe at this stage in his recovery.

9. In my medical opinion, a dose lower than 16 mg a day exposes Joe to a significant risk of relapse, overdose, and death.

10. As his treating physician, I monitored Joe's recovery progress from July 2019 until his incarceration in August 2019. It is my understanding that Joe plans to return to Middlesex Recovery for treatment after his release from incarceration.

11. With the assistance of buprenorphine, Joe was able to control the symptoms of his addiction while he was in treatment with me. He did not have a single positive drug screen at our clinic. I would describe Joe as extremely motivated to stay in active recovery. In my opinion, the continued administration of buprenorphine maintenance treatment is medically necessary to treat his opioid use disorder.

12. In my medical opinion, Joe is not ready to be tapered off of buprenorphine. The length of time a patient remains on buprenorphine depends on the particular circumstances of the individual patient. Some of my patients have required buprenorphine treatment for many years. In general, patients with chronic pain and mental illness tend to need to be on buprenorphine for longer, and Joe falls into both those categories.

13. For patients who are ready to be tapered off of buprenorphine, it is critical that the tapering happen very slowly. A change in dose of 2 mg usually takes at least two months. Once

2

tapering begins, it usually takes one or more years to taper off of buprenorphine completely. I have seen patients relapse when they are tapered off of buprenorphine too quickly. The length of a taper will depend on the patient and must be determined through an individualized assessment.

14. A taper period that is too short will cause symptoms of withdrawal, which can include diarrhea, vomiting, muscle pain, tremors, and insomnia. Patients in withdrawal from MAT are at a high risk of relapse because the symptoms are so uncomfortable. It is for this exact reason that, when I lower a patient's dose, I do so over many months or years.

15. Forcing Joe to cease his buprenorphine maintenance treatment while incarcerated exposes him to a severe risk of relapse. I have heard about numerous patients who have relapsed, overdosed, and died soon after they were released because they were not provided MAT while they were incarcerated. Joe faces a particularly high risk of relapse and overdose because of his chronic pain and mental illness, and also because opioid use is so prevalent in his community of Gloucester.

16. I anticipate that one day Joe will be ready to start slowly tapering off of his buprenorphine treatment. But doing so now defies medical judgment. Forcing Joe to discontinue his buprenorphine treatment while he is incarcerated in DOC facilities puts his life at serious risk.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December __, 2019

Dr. Yvonne Smikle

3