UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH SCLAFANI, MICHAEL FEINSTEIN, and BRET CAPPOLA,<br><br>Plaintiffs,<br><br>v.<br><br>CAROL A. MICI, in her official capacity as Commissioner of the Massachusetts Department of Correction, DOUGLAS DEMOURA, in his official capacity as Superintendent of MCI-Cedar Junction, and STEVE SILVA, in his official capacity as Superintendent of MCI-Norfolk,<br><br>Defendants. | Civil Action No. 1:19-cv-12550 |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Now come the Defendants in the above-captioned matter and hereby oppose plaintiffs' request for a temporary restraining order and preliminary injunction. In support whereof, the defendants rely upon this memorandum and the Affidavits of Steven Descoteaux, M.D. and Jodi Hockert-Lotz which are submitted herewith.

### I.     BACKGROUND

The three named plaintiffs have filed a two-count Complaint[1] seeking both a Temporary

---

[1] Plaintiffs allege that the failure to provide ongoing buprenorphine maintenance treatment, presumably at previously prescribed levels when they were in the community, is a violation of the Eighth Amendment to the U.S. Constitution pursuant to 42 U.S.C. Section 1983 (Count I) as well as a violation of the Americans with Disabilities Act ("ADA") (Count II).

Restraining Order and Preliminary and Permanent Injunctive Relief. More specifically, plaintiffs ask this Court to temporarily order the Defendants to:

    a)    provide plaintiffs "buprenorphine maintenance treatment at the dosage previously prescribed by their medical providers until this court can rule on a motion for permanent injunctive relief" and,

    b)    issue an "order preventing Defendants from imposing discipline against Plaintiffs for any buprenorphine obtained while in DOC custody during any period of time when Defendants were not providing plaintiffs with buprenorphine maintenance treatment."[2]

As two of the three named plaintiffs currently receive buprenorphine maintenance treatment in dosages as prescribed by the medical providers utilized by the Department of Correction, and the third named plaintiff may opt to restart maintenance treatment, each without the risk of an imminent end to buprenorphine treatment, the matter is not appropriate for this Court's exercise of its extraordinary power of granting temporary injunctive relief. Accordingly, plaintiffs' motion should be denied.

## II. STATEMENT OF THE FACTS

The Massachusetts Department of Correction ("DOC") contracts with a vendor, Wellpath, LLC ("Wellpath") to provide all means of addressing the serious medical, dental and mental health needs of the DOC inmate population based upon medical assessments of the individual patients and all other patient circumstances. Descoteaux Affidavit, paragraph 1. Wellpath staff are responsible for making all decisions with respect to the type, timing and level of services needed by inmates covered by the contract. Descoteaux Affidavit, paragraph 1.

---

[2] This request appears related to the fact that plaintiff Feinstein was involved in a fight with another inmate on December 10, 2019 during which plaintiff Cappola refused to leave the area at the direction of staff. Both inmates were temporarily placed in a limited privilege unit.

Wellpath coverage includes, without limitation, all medical, mental health, forensic mental health and dental programs constituting services under the contract. Descoteaux Affidavit, paragraph 1. Wellpath has the contractual authority and responsibility for the implementation, modification and continuation of any and all health care for inmates. Descoteaux Affidavit, paragraph 1.

With regard to medication assisted treatment ("MAT"), Wellpath policy and practice is to provide for the continuation of MAT unless it is voluntarily discontinued by the inmate or determined by a qualified addiction to no longer be clinically indicated by a qualified addiction specialist. Descoteaux Affidavit, paragraph 7.[3] There is no Wellpath or DOC policy that restricts either the dosage or length of treatment for which an individual may receive medically necessary MAT. Descoteaux Affidavit, paragraphs 7-9.

MAT for male inmates is not restricted to MCI-Cedar Junction. In fact, there are approximately 10 inmates currently receiving MAT at MCI-Shirley, a medium security prison. Specifically, MAT, buprenorphine. Descoteaux Affidavit, paragraph 10.

*Plaintiff Sclafani*

Joseph Sclafani is a 43 year old male inmate of the Massachusetts Department of Correction ("DOC") and currently incarcerated at the Massachusetts Correctional Institution – Norfolk ("MCI-N"). He was first admitted to the Massachusetts Correctional Institution –Cedar Junction ("MCI-CJ") on August 15, 2019 to serve a sentence of 2.5 years to 4.5 years for a fourth conviction of operating under the influence. His current scheduled release date is June 1, 2022. When admitted to MCI-CJ, Sclafani had been diagnosed with opioid use disorder ("OUD"), and had an active prescription for buprenorphine in the community, but also had

---

[3] This appears to be acknowledged, at least in part, by plaintiffs at paragraph 83 of the Complaint.

fentanyl in his urine along with the buprenorphine. For safety reasons, due to the presence of fentanyl, it was important that Mr. Sclafani receive a lower dose of buprenorphine. Descoteaux Affidavit, paragraph 6. Sclafani was continued on slowly tapering doses of buprenorphine over his first ninety (90) days of incarceration. Descoteaux Affidavit, paragraph 6. At the end of his ninety (90) day course, he was transferred to MCI Norfolk, where he currently resides. Descoteaux Affidavit, paragraph 6. Sclafani's last dose of buprenorphine appears to have been given on November 17, 2019. Descoteaux Affidavit, paragraph 6. Mr. Sclafani currently expresses interest in resuming treatment with buprenorphine, and he presents as clinically appropriate to restart treatment with buprenorphine. Descoteaux Affidavit, paragraph 6. I have directed the treatment provider at MCI-Norfolk to meet with Mr. Sclafani and if he is willing to resume an appropriate dose of buprenorphine treatment as determined by the MCI-Norfolk medical provider, to begin such treatment. Descoteaux Affidavit, paragraph 6.

*Plaintiff Feinstein*

Michael Feinstein is a 33 year old DOC inmate currently incarcerated at MCI-CJ. He was admitted on October 1, 2019 to serve a sentence of 3-4 years for breaking and entering in the nighttime with intent to commit a felony. His current scheduled release date is September 30, 2023. At the time of his admission, Mr. Feinstein had an existing prescription for buprenorphine. Descoteaux Affidavit, paragraph 4. The prescription was verified and continuing buprenorphine medication ordered. Descoteaux Affidavit, paragraph 4. Mr. Feinstein continues to take buprenorphine at MCI-CJ, and he has been assured that as a patient who was admitted to the DOC with a verified prescription for buprenorphine, he may to continue taking buprenorphine in doses deemed appropriate by Wellpath throughout his incarceration. Descoteaux Affidavit, paragraph 4.

*Plaintiff Cappola*

Bret Cappola is a 38 year old male inmate currently incarcerated at MCI-CJ. He was admitted on September 26, 2019 to serve a 4 year sentence for breaking and entering in the nighttime to commit a felony. His current scheduled release date is August 10, 2023. Mr. Cappola was started on buprenorphine at a daily dose of 8 mg. while an inmate at the Hampden County House of Correction. Descoteaux Affidavit, paragraph 5. Mr. Cappola was worried that he would not be able to continue on buprenorphine when he arrived at the DOC, however, he started treatment with the 8 mg. dose on September 27, 2019 and he remains on the same dosage today. Descoteaux Affidavit, paragraph 4. Cappola will be permitted to remain on MAT and would be eligible for an increased dosage if deemed clinically appropriate. Descoteaux Affidavit, paragraph 5.

### III. STANDARD OF REVIEW

Preliminary injunctive relief "is an 'extraordinary and drastic remedy,'" *Pesce v. Coppinger*, 355 F.Supp. 3d 35, 39 (D. Mass. 2018) citing *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (internal citation omitted). For injunctive relief to issue, a plaintiff must prove:

> (1) that [he] has a substantial likelihood of success on the merits; (2) that [he] faces a significant potential for irreparable harm in the absence of immediate relief; (3) that the ebb and flow of possible hardships are in favorable juxtaposition (i.e., that the issuance of an injunction will not impose more of a burden on the non-movant than its absence will impose on the movant (known as the balance of equities between the parties); and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest.

*McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001).

## IV.     ARGUMENT

### A. PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF AN EIGHTH AMENDMENT OR ADA CLAIM.

As the First Circuit has stated, "the Constitution only requires that the courts make certain that professional judgment was in fact exercised. **It is not appropriate for courts to specify which of several professionally acceptable choices should have been made.**" *Doe v. Gaughan,* 808 F.2d 871, 884 (1st Cir. 1986) (emphasis added). "The Supreme Court emphasized that treatment and training decisions, if made by a professional, are presumptively valid . . . [t]he Court made clear that, by adopting a deferential standard, the federal judiciary's interference with the internal operations of state institutions would be minimized." *Id.* These professional judgments are entitled to deference. See, e.g.*, Bell v. Wolfish*, 441 U.S. 520, 539, 548 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"); *United States v. Conley*, 531 F.3d 56, 59 (1st Cir. 2008) ("We give great deference to a prison administrator's determination that prison safety is at risk.").

A violation of the Eighth Amendment requires proof of deliberate indifference. *Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011), *citing Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). A plaintiff must show at least "a wanton disregard sufficiently evidenced 'by denial, delay or interference with prescribed health care.'" *Battista*, 645 F.3d at 453, *citing DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991). Under the Fourteenth Amendment, a plaintiff must show that the defendant "failed to exercise a reasonable professional

judgment." *Battista*, 645 F.3d at 453, *citing Youngberg*, 457 U.S. at 321. As the First Circuit recently observed, the two standards "are not all that far apart." *Id*.

> Both the *Farmer* and *Youngberg* tests leave ample room for professional judgment, constraints presented by the institutional setting, and the need to give latitude to administrators who have to make difficult trade-offs as to risks and resources. This is a regular theme in the Eighth Amendment cases, . . . and it is equally important under *Youngberg*. There, while stressing that civilly committed persons are entitled to an extra margin of protection, the Court also stated that there can be more than one reasonable judgment, and that the choice in such cases is for the professional.

*Battista*, 645 F.3d at 453 (citations omitted).

"The standard encompasses a narrow band of conduct: subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim, rather, the treatment provided must have been so inadequate as to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011) citing *Burrell v. Hampshire Cty*., 307 F.3d 1, 8 (1st Cir. 2002)). Prisons are "by no means required to tailor a perfect plan for every inmate; while it is constitutionally obligated to provide medical services to inmates, these services need only be on a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." *United States v. Derbes*, 369 F.3d 579, 583 (1st Cir. 2004) (citations and internal quotations omitted).

The DOC, through its vendor medical provider Wellpath, is currently making available the continuation of MAT maintenance treatment for inmates unless discontinued by the inmate or a determination is made by a qualified addiction specialist[4] that such treatment is no longer

---

4      G.L. c. 127, § 1 defines a "Qualified addiction specialist" as:
a treatment provider who is: (i) a physician licensed by the board of registration of medicine, a licensed advanced practice registered nurse or a licensed physician assistant; and (ii) a qualifying practitioner or qualifying other practitioner, as defined in the federal Controlled Substances Act, as codified at 21 U.S.C. 823(G), who has been issued an

clinically indicated. Descoteaux Affidavit, paragraph 7. This is a medical judgment being made by medical professionals. None of the defendants in this case has made any decision or taken an action that might properly be characterized as "wanton disregard" sufficiently evidenced "by denial, delay or interference with prescribed health care." To the contrary, two of the named plaintiffs have been maintained on buprenorphine and will continue to receive such treatment until they choose to stop the treatment or it is no longer clinically appropriate as determined by a qualified addiction specialist. Descoteaux Affidavit, paragraphs 4 and 5. The third plaintiff may resume an appropriate dose of buprenorphine as clinically determined by a Wellpath specialist. Descoteaux Affidavit, paragraph 6. Contrary to the assertions of plaintiffs, MAT is not restricted to inmates at MCI-Cedar Junction. For example, it is currently being provided to approximately 10 inmates at MCI-Shirley. Descoteaux Affidavit, paragraph 10.

For these reasons, plaintiffs' Eighth Amendment and ADA claims fail. A mere disagreement between among qualified addiction specialists concerning the appropriate dosages in varied settings and individualized assessments of need at any given period in treatment are not the stuff of a Section 1983 claim. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976))." The care provided must have been so inadequate as to shock the conscience. *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 162 (1st Cir. 2006) (citations and quotations omitted). The Eighth Amendment standard applied in this

---

    identification number by the United States Drug Enforcement Administration pursuant to the federal Controlled Substances Act, as codified at 21 U.S.C. 823(g)(2)(D)(ii) or 21 U.S.C. 823(g)(2)(D)(iii).

Circuit is that inmates should receive adequate medical care based on the exercise of professional judgment. *United States v. DeCologero*, 821 F.2d 39, 43 (1st Cir. 1987) (adequate medical care does not mean that an inmate is entitled to ideal care or the care of his choice); *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991) (it must be shown that treatment was "so grossly inadequate as to constitute a knowing denial of proper medical care").

Allegations which reflect an inmate's disagreement with prison medical staff as to the appropriate course of treatment do not state a constitutional violation, even if they present a colorable claim of negligence. See *Watson v. Canton*, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment..."); *DesRosiers v. Moran*, supra at 20; *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). Mere disagreement over the course of treatment, or the source of treatment, does not constitute "deliberate indifference." *Sires v. Berman*, supra at 12-13; *Ferranti v. Moran*, 618 F.2d 888, 890-891 (1st Cir. 1980). Where the dispute concerns, not the absence of medical care, but the choice of a certain course of treatment, the plaintiff must prove that the treatment was "so clearly inadequate as to amount to a refusal to provide essential care." *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991), quoting *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir. 1985). Prison officials are entitled to rely upon qualified medical professionals for such assessments. *Sires v. Berman*, supra at 13 (1st Cir. 1987) ("prison officials, after proper investigation, learned of and relied upon the recommendations of the doctors and nurses, as they are entitled to do"); *Layne v. Vizant*, supra at 472; *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Rosen v. Chang*, 811 F.Supp. 754, 761 (D.R.I.

1993). There is simply no evidence that the named defendants intentionally ignored any serious medical need.

Similarly, with regard to the ADA claim, plaintiffs can no longer credibly argue they will be denied MAT treatment. Instead, they request that this Court order a specific dosage and single medication regardless of changes in the plaintiff patients' future clinical condition, presentation, or desires.

Plaintiffs are not denied equal access to any benefits, programs, or services. The premise for plaintiffs' claims in this regard is the erroneous representation that plaintiffs may only receive MAT treatment while at MCI-Cedar Junction. As indicated in the Affidavit of Dr. Descoteaux, for example, there are currently 10 inmates at MCI-Shirley receiving MAT treatment and the "number of inmates receiving buprenorphine and the DOC facilities providing such treatment continues to expand." Descoteaux Affidavit, paragraph 10. A disagreement with a reasoned medical judgment is not sufficient to state a disability discrimination claim. *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006). Here, the defendants, through the DOC's medical provider Wellpath, provide for an individualized assessment of each inmate patient's condition in determining the appropriate MAT treatment for him.

### B. PLAINTIFFS WILL NOT SUFFER IRREPARABLE INJURY IN THE ABSENCE OF INJUNCTIVE RELIEF.

"[T]he burden of demonstrating that a denial of interim injunctive relief would cause irreparable harm [is placed] squarely upon the movant." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996). This is a substantial burden. Id. Plaintiffs' irreparable harm claim, that plaintiffs Feinstein and Cappola will be "entirely removed" from buprenorphine treatment on "January 6 or 7, 2020" and "December 30, 2019" respectively is

illusory. Both may continue receiving buprenorphine throughout their incarceration as clinically appropriate. Descoteaux Affidavit, paragraphs 4 and 5. To the extent plaintiff Scalafani may continue to have cravings or lingering withdrawal symptoms, he may resume an appropriate dose of buprenorphine. Descoteaux Affidavit, paragraph 6.

Plaintiffs' dramatic claims that they can avoid withdrawal symptoms and "increased risk of relapse, overdose, and death only if they purchase their life-saving buprenorphine on the black market[5]," while first-class hyperbole, is belied by the fact that they may continue to receive MAT treatment throughout their incarceration. Each of the plaintiffs has available through Wellpath around-the clock treatment from a staff of nurses and physicians that includes MAT treatment.[6]

Appropriate dosing decisions are best left to practitioners who are required to see the patient "in the chronic care clinic every 30 days until the patient's dosing is stabilized."[7] Moreover, the fact that a plaintiff may suffer opioid withdrawal symptoms does not rise to an Eighth Amendment violation. See *Ramos v. Patnaude*, 640 F.3d. 485 (1st Cir. 2011) (holding that doctor who treated an inmate's heroin withdrawal with a pharmaceutical protocol which lasted a total of nine days was not deliberately indifferent); *French v. Daviess County, Ky.,* 376 Fed.Appx. 519, 522 (6th Cir. 2010) (no deliberate indifference in weaning prisoner off prescription narcotic using a weaker drug so as to minimize withdrawal symptoms). *Baker v. Stevenson*, 605 Fed. Appx. 514, 519-520 (6th Cir. 2015) ("The facts on hand indicate that the medical staff sought to gradually wean [Plaintiff] off Methadone rather than forcing him to go

---

[5] Complaint, paragraph 11.
[6] DOC Statewide Inmate Health Services Contract - See https://www.commbuys.com/bso/external/purchaseorder/poSummary.sdo?docId=PO-19-1025-DOCFS-FISCM-13798&releaseNbr=0&parentUrl=active
[7] Wellpath Medication Assisted Treatment Protocol, Section 5.5.10.4 a copy of which is attached hereto as Exhibit A. Available also at https://www.mass.gov/doc/wellpath-medication-assisted-treatment-protocol/download.

Case 1:19-cv-12550-LTS   Document 40   Filed 12/23/19   Page 12 of 14

12

"cold turkey." Cf. *French*, 376 F. App'x. at 522 (contrasting a gradual detoxification protocol with an abrupt removal of an addictive drug so as to minimize withdrawal symptoms).

MCI-Cedar Junction is a reception and diagnostic center for new male inmates to the DOC. Hockert-Lotz Affidavit, paragraph 5. These newly admitted inmates are considered transient and are assigned housing on the maximum security side of the institution until their appropriate classification is determined. Hockert-Lotz Affidavit, paragraph 5. Classification of a newly admitted inmate may take up to 90 days. Hockert-Lotz Affidavit, paragraph 5. All transient inmates housed on the maximum side of the institution, whether receiving MAT or not, have limited canteen, non-contact visitation, and limited job availability. Hockert-Lotz Affidavit, paragraph 5. They are eligible to participate in substance abuse treatment programs which are offered. Hockert-Lotz Affidavit, paragraph 5. Although not all inmates receiving MAT at MCI-Cedar Junction are housed in Block 5, it is used as a preferred unit for patients receiving MAT because it helps MAT patients avoid strong-arming from other inmates to divert their MAT medication. Hockert-Lotz Affidavit, paragraph 5. It also provides for an administratively convenient way to administer MAT, a time consuming endeavor, to a large number of inmates. Hockert-Lotz Affidavit, paragraph 5. Thus, plaintiffs' claims that they are not receiving "equal access to any benefits, programs, or services" are misplaced.

Plaintiffs have not demonstrated that they will suffer irreparable harm if they are not granted injunctive relief, and have not met the burden of proving they are entitled to injunctive relief.

### C. IN BALANCING THE HARMS AND THE PUBLIC INTEREST, DEFERENCE MUST BE GIVEN TO THE DEFENDANTS' DISCRETION TO IMPLEMENT MAT POLICY.

"When evaluating medical care and deliberate indifference, security considerations

inherent in the functioning of a penological institution must be given significant weight." *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014). "Prison administrators … should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878 (1979). "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974). "In consequence, even a denial of care may not amount to an Eighth Amendment violation if that decision is based in legitimate concerns regarding prisoner safety and institutional security." *Kosilek*, 774 F.3d at 83.

Plaintiffs can no longer credibly claim that they will be denied MAT maintenance treatment. This reduces their argument before this Court to one of requesting to be treated in accordance with a prior prescription judgment of a medical provider no longer actively monitoring the plaintiffs' individual conditions or needs, and that said prior prescriptions remain ossified regardless of sound medical judgment and practice. This Court should not adopt plaintiffs' untenable position.

Given the deferential standard involved, the Plaintiffs have not demonstrated that they are substantially likely to prove that they have been denied adequate medical care as that standard is analyzed under the Eighth Amendment or ADA.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary and Permanent Injunction Relief should be DENIED.

                              Respectfully submitted,

                              Defendants by their counsel,

                              NANCY ANKERS WHITE
                              Special Assistant Attorney General

Dated:  December 23, 2019            /s/ Philip W. Silva
                                             Philip W. Silva
                                             Supervising Counsel
                                             Department of Correction
                                             Bridgewater State Hospital
                                             20 Administration Road
                                             Bridgewater, MA 02324
                                             Tel. (508) 279-4538
                                             B.B.O. #548175
                                             philip.silva@massmail.state.ma.us

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of Defendants' Memorandum of Law in Support of Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction and Supporting Affidavit of Steven Descoteaux, M.D. was served upon Plaintiffs' Counsel.

Date:  December 23, 2019                         /s/ Philip W. Silva
                                                       Philip W. Silva
                                                       Supervising Counsel